UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

INTERNATIONAL UNION OF PAINTERS &
ALLIED TRADES, DISTRICT COUNCIL NO. 4,
*et al.*,                                                          **REPORT AND RECOMMENDATION**

       Plaintiffs,

                19-CV-01136(JLS)(JJM)

v.

J.A.C. GLAZING, INC. and
JUSTIN CURATALO,

       Defendants.
_____

    Plaintiffs commenced this action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, alleging that defendant J.A.C. Glazing, Inc. ("JAC") violated its Collective Bargaining Agreements ("CBAs") with International Union of Painters & Allied Trades, District Council No. 4 (the "Union") [1] when it failed to pay monetary contributions to certain funds, and that Justin Curatalo, as the controlling officer and agent of JAC, breached his fiduciary duty. Amended Complaint [14].[2]

    Before the court is plaintiffs' motion for default judgment [21] pursuant to Fed. R. Civ. P. ("Rule") 55, which has been referred to me by District Judge John L. Sinatra, Jr., for

---

[1]   In addition to the Union, the plaintiffs are the Trustees of the Painters District Council No. 4 Health & Welfare Fund ("Health Fund"); the Trustees of the Painters District Council No. 4 Finishing Trades Institute of Western and Central New York ("DC4 FTI"); and the Trustees of the Painters District Council No. 4 Labor Management Cooperative Initiative Trust Fund ("STAR Fund").

[2]   Bracketed references are to CMF/ECF docket entries, and page references are to CM/ECF pagination.

initial consideration. Having considered plaintiffs' submissions, I recommend that plaintiffs be granted a default judgment in the amount of $71,793.13, and be granted certain injunctive relief.

## BACKGROUND

The parties' familiarity with the background of this case is presumed. This is plaintiffs' second motion for a default judgment. Their first motion was directed to the Complaint, and while Judge Sinatra initially granted that motion, he later vacated the default judgment because "[p]laintiffs' allegations d[id] not establish [d]efendant's liability as specified in the Complaint". Decision and Order [13] at 6. Specifically, the Complaint alleged that defendants "failed to adhere to their obligations under the CBA for work performed during the period September 1, 2016 through June 30, 2017", but the "only CBA referenced in the Complaint . . . [wa]s effective for the period of May 1, 2018 through April 30, 2022", thereby precluding recovery of the damages sought. Id. However, Judge Sinatra granted plaintiffs leave to file an Amended Complaint to correct this deficiency.

The November 10, 2021 Amended Complaint [14], asserts the following five claims for relief:

-- First Claim for Relief: seeking judgment in favor of the fund trustees against JAC and Curatalo for delinquent contributions to the Health Fund and DC4 FTI in the amount of $10,824.18, plus interest and attorney's fees (Amended Complaint [14], ¶¶48-61);

-- Second Claim for Relief: seeking judgment in favor of the fund trustees against JAC for delinquent contributions to the Star Fund in the amount of $391.60, plus interest and attorney's fees (id., ¶¶62-68);

--    Third Claim for Relief: seeking judgment in favor the fund trustees against JAC for contributions to the IUPAT Funds[3] in the amount of $19,832.05, plus interest, liquidated damages in the amount of $3,966.41, and attorney's fees (id., ¶¶69-74);

--    Fourth Claim for Relief: seeking judgment in favor of the fund trustees against JAC for unremitted union membership dues and dues assessments in the amount of $3,315.28 plus interest and attorney's fees (id., ¶¶75-80); and

--    Fifth Claim for Relief: seeking injunctive relief requiring JAC to submit to an audit of its payroll records by plaintiffs' accountants and requiring payment of all delinquent contributions revealed by the audit, including interest, attorney's fees, audit fees and liquidated damages (id., ¶¶ 81-87).

JAC and Curatalo were served with the Amended Complaint in November 2021. (Affidavits of Service [16, 17]), but neither party responded. Consequently, a Clerk's Entry of Default was obtained on December 27, 2021 [19], and shortly thereafter plaintiffs moved for a default judgment [21]. In support of the motion, plaintiffs included a spreadsheet of the delinquent contributions owed through December 31, 2021 [21-6], copies of remittance reports [21-7], and attorney billing records [21-4].[4]

Plaintiffs seek a judgment in the amount of $71,793.13. This amount includes:

---

[3]    The Amended Complaint alleges that the Union is the collection agent for the International Union of Painters & Allied Trades Pension Fund, the International Union of Painters & Allied Trades Annuity Fund, the International Union of Painters & Allied Trades Finishing Trades Institute, and the International Union of Painters & Allied Trades Labor Management Cooperation Initiative (collectively referred to as the "IUPAT Funds").

[4]    Although plaintiffs were not required to notify defendants of their motion for a default judgment, they mailed them copies of the motion [21-11]. See Moskovitz v. La Suisse, 2013 WL 6197163, *3 (S.D.N.Y. 2013) ("if a party hasn't appeared, the Federal Rules don't require that a default judgment be served on him at all. [Rule] 55(b)(2) only requires service of a notice of default judgment if 'the party against whom a default judgment is sought has appeared personally or by a representative'").

-- First Claim for Relief: $33,415.51 jointly against JAC and Curatalo, which includes $10,824.18 in delinquent contributions to the Health Fund and DC4 FTI, $8,256.88 in interest, and $14,334.45 in attorney's fees;

-- Second Claim for Relief: $574.94 against JAC, which includes $391.60 in delinquent contributions to the STAR Fund, and $183.34 in interest;

-- Third Claim for Relief: $32,947.16 against JAC, which includes $19,832.05 in delinquent benefit contributions to the IUPAT Funds, $9,148.70 in interest, and $3,966.41 in liquidated damages calculated at 20%;

-- Fourth Claim for Relief: $4,855.52 against JAC, which includes $3,315.28 in unremitted union membership dues, and $1,540.24 in interest; and

-- Fifth Claim for Relief: that JAC submit to an audit of its payroll records, and if the audit reveals further delinquent contributions, that JAC remit these contributions, along with interest, attorney's fees, liquidated damages, and audit fees.

## DISCUSSION

**A.    Default Judgment**

In granting the initial default judgment, Judge Sinatra explained:

"To secure a default judgment under Rule 55(h), a party must first secure the clerk's entry of default by demonstrating, by affidavit or some other means, that the opposing party is in default. Once default is entered, the allegations of the complaint establishing the defendants' liability are accepted as true, except for those relating to the amount of damages. In considering a default judgment under Rule 55(b), however, the Court must still determine whether the complaint's well-pleaded allegations state a claim upon which relief can be granted. Once a defendant's liability is established by entry of a default judgment, the only remaining question is whether there is 'adequate evidentiary support' for the damages sought." Decision and Order [10] at 4-5 (internal citations omitted).

The Clerk has entered default, and the allegations of the Amended Complaint, as well as the various attachments thereto, are sufficient to establish defendants' liability for the claims for relief set forth in the Amended Complaint. In particular, the Amended Complaint [14], cures the deficiency identified by Judge Sinatra by now alleging that JAC was a signatory to two CBAs - the first effective from May 1, 2014 through April 30, 2018, and the second effective May 1, 2018 through April 30, 2022 - and seeking amounts due during the effective dates of the CBAs. For these reasons, I recommend that a default judgment be granted.

**B.        Damages**

"While the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. Rather, a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded." Bricklayers Insurance & Welfare Fund v. Everest Masonry Construction, 2017 WL 4179853, *3 (E.D.N.Y.), adopted, 2017 WL 4217116 (E.D.N.Y. 2017). Rule 55(b)(2) states that a court may conduct a hearing to determine the amount of damages, but no hearing is required where a review of detailed affidavits and documentary evidence demonstrates there is an adequate basis for the damages sought. See Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989).

The damages available to plaintiffs are well delineated. ERISA Section 502(g)(2) states that the court shall award: "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount

determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2).  Hence, there is "a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded". Buffalo Laborers Welfare Fund v. Di Pizio Construction Co., Inc., 2018 WL 11265028, *2 (W.D.N.Y. 2018).

1. **First through Fourth Claims for Relief: Monetary Damages**

    a. **Curatalo**

    Unlike the other claims in the Amended Complaint, the First Claim for Relief names both JAC and Curatalo as jointly and severally liable to the plaintiffs for unpaid contributions to the Health Fund and DC4 FTI.  The Amended Complaint [14] - the allegations of which have been deemed admitted - identifies Curatalo as a "fiduciary within the meaning of Section 3(21) of ERISA . . . with respect to contributions to the Funds that are currently due and owing and which may become due and owing to the Funds from . . . JAC during the pendency of this action". Id., ¶21.  ERISA renders a fiduciary "personally liable to make good to such plan any losses to the plan resulting from such breach, and . . . [provide] such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. §1109(a). Therefore, I conclude that Curatalo may be liable for the damages sought in the First Claim for Relief.

    b. **Delinquent Contributions and Dues**

    The Affidavit of Susan Bernat [21-5], and in particular the attached remittance reports [21-7], support plaintiffs' entitlement to the delinquent contributions and dues as identified by plaintiffs in the First through Fourth Claims for Relief.  *See* Spreadsheet [21-3] at 2.

      **c.**      **Interest**

"In an action to recover delinquent contributions pursuant to 29 U.S.C. §1145, an award of 'interest on the unpaid contributions' is mandatory." <u>Mason Tenders District Council Welfare Fund v. LJC Dismantling Corp.</u>, 400 F. Supp. 3d 7, 23 (S.D.N.Y. 2019) (*quoting* 29 U.S.C. §1132(g)(2)(B)). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan". 29 U.S.C. §1132(g)(2). In this case, both the IUPAT's Policy and Procedure for Collection of Delinquent Contributions and Payroll Audits ([14-8] at 6, §5) and the DC4 Funds Collections Policy ([14-7] at 4, §2(a)) state that a 1% interest rate will be applied monthly to all unpaid contributions by the employer. Therefore, I find that plaintiffs have established their entitlement to interest in the amounts sought in connection with the First through Fourth Claims for Relief. *See* Spreadsheet [21-3] at 2.

      **d.**      **Liquidated damages**

Pursuant to 29 U.S.C. §1132(g)(2)(C), ERISA "provides for a double interest payment or alternative liquidated damages to compensate a multiemployer benefit fund plan for costs incurred in connection with delinquencies". <u>Buffalo Laborers Welfare Fund</u>, 2018 WL 11265028, *2. *See also* <u>Bricklayers Insurance & Welfare Fund v. Doran Tatrow Associates, Inc.</u>, 2021 WL 7208997, *7 (E.D.N.Y. 2021) ("[u]nder ERISA, Plaintiffs are entitled to recover liquidated damages in an amount equal to the greater of (i) interest on the unpaid contributions or (ii) the liquidated damages provided for under the plan, in an amount not in excess of 20% of the unpaid contributions"). Consistent with ERISA, plaintiffs have elected to seek the 20% liquidated damages provided for under the IUPAT Funds' Policy and Procedure for the Collection of Delinquent Contributions. [14-8] at 6, §5. Therefore, I find that plaintiffs have

demonstrated their entitlement to the liquidated damages sought in connection with the Third Claim for Relief.

### e. Attorney's Fees and Costs

ERISA permits the collection of "reasonable attorney's fees and costs" as a remedy for unpaid contributions. 29 U.S.C. §1132(g)(2)(D). "The prevailing party has the burden of producing contemporaneous time records that specify, for each attorney, the date, the hours expended, and the nature of the work done, so the court can audit the hours and determine whether they were reasonably expended." Buffalo Laborers Welfare Fund, 2018 WL 11265028, *4. "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO v. Bar-Mac Construction, Inc., 2017 WL 9511070, *4 (E.D.N.Y.), adopted, 2017 WL 1390668 (E.D.N.Y. 2017).

"The first step [in determining a reasonable fee] is to calculate the 'lodestar' amount - that is, the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Buffalo Laborers Welfare Fund, 2018 WL 11265028, *4. "A reasonable hourly rate is one that is consistent with the prevailing market rates in the relevant community, that is, what similarly skilled attorneys in the area would charge for similar work." Id.

Here, nearly all of the legal work was performed by Joseph Guza, Esq. a junior partner at the law firm of Lipsitz Green Scime Cambria LLP. *See* Guza Affidavit [21-1], ¶¶2, 15; billing records [21-4]. According to the itemized legal bills submitted by plaintiffs [21-4], Mr. Guza's rates ranged from $235.00 to $250.00 during the duration of his work on this matter.

I find these requested hourly rates to be reasonable. *See* International Association of Sheet Metal, Air, Rail & Transportation Workers, Local Union No. 71 v. Lovejoy Metals, Inc., 495 F. Supp. 3d 174, 191 (W.D.N.Y. 2020) (finding rates of $225.00 (2018) and $235 (2019) for Mr. Guza to be reasonable); Buffalo Laborers Welfare Fund, 2018 WL 11265028, *5 (finding rates of $215.00/hr. to be "well within the range previously awarded by judges in this District in similar [ERISA] cases").

Turing to the hours expended, "[a] court should exclude hours that were excessive, redundant, or otherwise unnecessary to the litigation." International Association of Sheet Metal, Air, Rail & Transportation Workers, Local Union No. 71, 495 F. Supp. 3d at 191. From the billing records submitted [21-4], it appears that approximately 53.3 hours in attorney time was spent on this matter, with approximately 11.8 of those hours being incurred after Judge Sinatra's September 30, 2021 vacatur of the initial default judgment. More careful draftsmanship could have avoided the need for the Amended Complaint and the second default judgment motion. Overall, however, I find that the hours spent on obtaining a default judgment in a case of this type were reasonable. Therefore, I recommend that plaintiffs be granted attorney's fees of $13,126.50 and costs in the amount of $1,207.95 on their First Claim for Relief

### 2. Fifth Claim for Relief: Injunctive Relief

"Under ERISA, where, as here, an action is brought by a fiduciary on behalf of a plan to enforce Section 515, the Court is authorized to award 'such other legal or equitable relief as the court deems appropriate.' 29 U.S.C. §1132(g)(2)(E). That relief may take the form of an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its

records. However, plaintiffs must first demonstrate that they have met the requirements for obtaining a permanent injunction by showing irreparable harm and the absence of an adequate remedy at law." Bricklayers Insurance & Welfare Fund, 2017 WL 4179853, *5.

Defendants' default is sufficient to establish plaintiffs' entitlement to injunctive relief. "[W]here defendant has defaulted and has further refused to submit to the requested audit, plaintiffs have provided the Court with sufficient evidence that defendant intends to frustrate any judgment . . . or show contempt for the judicial process to satisfy the requirements for entry of an injunction". La Barbera v. Federal Metal & Glass Corp., 666 F.Supp.2d 341, 350 (E.D.N.Y. 2009). Because JAC has not been audited, "the full extent of its delinquent contributions remains unknown". Bricklayers Insurance & Welfare Fund, 2017 WL 4179853, *5. Therefore, I recommend that an injunction be entered directing JAC to submit to, and fully cooperate with, an audit of its books and records for the period of May 1, 2014 (the effective date of the initial CBA that is the subject of the Amended Complaint [14], ¶23) through the date of the judgment. See Sullivan v. Marble Unique Corp., 2011 WL 5401987, *14 (E.D.N.Y.), adopted, 2011 WL 5402898 (E.D.N.Y. 2011) ("[f]aced with recalcitrant ERISA defendants, numerous courts have granted an injunction requiring an employer, who both failed to make contributions and cooperate with an audit, to submit to a CBA-required audit covering a specific period of time").

However, I recommend that plaintiffs' request for delinquent contributions revealed by the audit, along with interest, attorney's fees, audit fees and liquidated damages, be denied without prejudice to renewal. See Sullivan, 2011 WL 5401987, *15 ("following the audit, plaintiffs should be permitted to move to reopen this case to seek an amended judgment against defendants upon discovery of any further unpaid contributions, dues and assessments, interest, liquidated damages, and/or audit costs").

## CONCLUSION

For these reasons, I recommend that plaintiffs' motion for default judgment [21] be granted, and that a default judgment be entered in the amount of $71,793.13 ($33,415.51 against JAC and Curatalo and $38,377.62 against JAC). I further recommend that plaintiffs' request for injunctive relief be granted to extent that JAC be directed to submit to, and fully cooperate with, an audit of its books and records for the period of May 1, 2014 through the date of the judgment, but that the remaining injunctive relief sought be denied, without prejudice to renewal following completion of the audit.

Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by June 21, 2022. Any requests for extension of this deadline must be made to District Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 7, 2022

<u>Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge